Bobby PERRY *v.* BAPTIST HEALTH

03-1130                                                   189 S.W.3d 54

Supreme Court of Arkansas
Opinion delivered June 24, 2004
[Rehearing denied September 9, 2004.*]

---

* CORBIN and THORNTON, JJ., would grant rehearing. DICKEY, C.J., and HANNAH, J., not participating.

*Lax, Vaughn, Fortson & McKenzie, P.A.*, by: *Grant E. Fortson*, for appellant.

*The Health Law Firm*, by: *Harold H. Simpson*, for appellee.

ANNABELLE CLINTON IMBER, Justice. ▇ This case comes to the court on petition for review from the Arkansas Court of Appeals. For his sole point on appeal, Appellant Dr. Bobby Perry contends that the circuit court erred in concluding that he failed to state sufficient facts in his first amended complaint, as required by Ark. R. Civ. P. 8(a)(1) (2004), and, therefore, erred in dismissing the complaint against Baptist Health pursuant to Ark. R. Civ. P. 12(b)(6) (2004). The Arkansas Court of Appeals affirmed the lower court's dismissal of Dr. Perry's complaint. We subsequently granted Dr. Perry's petition for review. When we grant review following a decision by the court of appeals, we review the case as though it was originally filed in this court. *Edens v. Superior Marble & Glass*, 346 Ark. 487, 58 S.W.3d 369 (2001). We hold that Dr. Perry's first amended complaint states sufficient facts to withstand a Rule 12(b)(6) motion to dismiss, and reverse the circuit court's order.

▇ Our review is limited to the circuit court's grant of Baptist Health's Rule 12(b)(6) motion to dismiss. In reviewing the trial court's decision on a motion to dismiss under Ark. R. Civ. P. 12(b)(6), this court treats the facts alleged in the complaint as true

and views them in a light most favorable to the party who filed the complaint. *Clayborn v. Bankers Standard Ins. Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002). In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.* This court's rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. Ark. R. Civ. P. 8(a) (2004); *Clayborn v. Bankers Standard Ins. Co., supra.* The court will look to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Clayborn v. Bankers Standard Ins. Co., supra.*

The facts, as pled in the first amended complaint, are as follows. In late 1996, Appellant Dr. Bobby D. Perry along with several other surgeons, entered into negotiations with Baptist Health (Baptist) to provide on-call trauma surgery services for Baptist Medical Center. As a result of their negotiations, Dr. Perry and the other surgeons formed Arkansas Trauma Surgeons, P.L.L.C. (ATS), a limited liability company with a stated purpose of entering into a professional services agreement with Baptist. The terms of the ATS Operating Agreement were negotiated with and approved by Baptist. More particularly, Baptist is designated as a third-party beneficiary to the ATS Operating Agreement, and the selection of physicians for membership in ATS is subject to Baptist's prior approval. The operating agreement provides that each member of ATS will be compensated based upon the number of times he or she provides call coverage for Baptist.

On December 5, 1996, and as contemplated by the ATS Operating Agreement, Baptist and ATS entered into a professional services agreement (Services Agreement).[1] In that agreement, ATS agrees to provide a qualified surgeon on call at all times to perform trauma surgery at Baptist Medical Center. Baptist in turn agrees to pay ATS $1,000 per day of on-call coverage. Baptist requires that the on-call coverage be provided by properly trained surgeons licensed in Arkansas, and it retains the right to have Baptist's Chief Executive Officer and Board of Trustees review the on-call services provided by ATS. In addition, Baptist retains the right to have its Trauma Committee review all professional services rendered by the individual physicians. The Services Agreement also

---

[1] The Services Agreement is incorporated by reference in Dr. Perry's first amended complaint.

calls on ATS to provide a list of physicians who, subject to Baptist's approval, will perform on-call services at the inception of the agreement. Any additions to the on-call rotation list must be approved by Baptist in advance. According to the Services Agreement, both ATS and the individual physicians providing on-call services are independent contractors.

Furthermore, under the terms of the Services Agreement, ATS agrees to designate a liaison to coordinate the trauma call coverage between Baptist and the physicians. The rotation schedule is to be governed by the ATS Operating Agreement. The Services Agreement requires ATS to provide a designated physician who will be reasonably available to perform trauma care at Baptist Medical Center when on call. Nonetheless, the designated physician may schedule other surgeries if he or she first obtains backup by another ATS physician. Baptist agrees to provide all facilities, equipment, supplies, and non-physician personnel needed for trauma services. In addition, the Services Agreement provides that Baptist will have no control over the methods by which each ATS physician exercises his or her medical judgment. However, Baptist retains the right to have an ATS physician removed from the trauma on-call schedule if it determines "in its reasonable judgment," that the ATS physician "is unsatisfactory in the performance of his duties."

According to the first amended complaint, Dr. Perry was the designated ATS physician on call for Baptist on June 6, 2001. Although Dr. Perry was scheduled to perform elective surgery at St. Vincent's Infirmary that same day, he made arrangements to have another ATS physician, Dr. Gabriel Peal, serve as back-up for his on-call duty with Baptist. While performing the elective appendectomy, Dr. Perry received an emergency phone call from Baptist. The call had come from a Jacksonville hospital where a patient, who had been involved in a motor vehicle accident, was being treated in the emergency room. Dr. Perry concluded that the Jacksonville patient was not stable enough to be transferred to Baptist Medical Center and that the Jacksonville hospital was sufficiently equipped to stabilize the patient.

Soon thereafter, a Baptist administrator called Dr. Perry and unsuccessfully tried to persuade him to transfer the Jacksonville patient to Baptist Medical Center. Dr. Perry then called the ATS liaison, Dr. Daryl Stewart, who concurred with Dr. Perry's medical judgment. Unfortunately, the Jacksonville patient died while being treated at the Jacksonville hospital. Baptist subsequently

directed ATS to remove Dr. Perry from the trauma on-call schedule effective July 13, 2001.

Dr. Perry filed suit in his individual capacity alleging breach of contract and breach of the implied covenant of good faith and fair dealing. In his first amended complaint, Dr. Perry alleges that he is an intended third-party beneficiary of the Services Agreement executed between ATS and Baptist. The complaint states that Baptist breached the contract and the implied covenant of good faith and fair dealing by unreasonably terminating Dr. Perry for his refusal to authorize a transfer of the Jacksonville patient to Baptist Medical Center.

Baptist filed a motion to dismiss pursuant to Ark. R. Civ. P. 12(b)(6), asserting that Dr. Perry's first amended complaint fails to state facts upon which relief can be granted. Baptist argued that Dr. Perry is foreclosed from suing for breach of contract because he is not a party to the contract. Baptist recognized that Dr. Perry could be an incidental beneficiary to the contract, but contended that the first amended complaint fails to factually support Dr. Perry's conclusion that he is an intended third-party beneficiary of the contract who is entitled to sue for breach of the contract. Following a hearing on the matter, the circuit court concluded that Dr. Perry "has failed to state in concise language facts showing that he is entitled to relief, as required by Ark. R. Civ. P. 8(a)(1)." Accordingly, the circuit court granted Baptist's Rule 12(b)(6) motion and dismissed Dr. Perry's first amended complaint without prejudice.

█ Dr. Perry's first amended complaint alleges a cause of action for breach of contract as a third-party beneficiary. Generally, in order to state a cause of action for breach of contract the complaint need only assert the existence of a valid and enforceable contract between the plaintiff and defendant, the obligation of defendant thereunder, a violation by the defendant, and damages resulting to plaintiff from the breach. *Rabalaias v. Barnett,* 284 Ark. 527, 683 S.W.2d 919 (1985) (citing *Allied Chem. Corp. v. Van Buren Sch. Dist.,* 264 Ark. 810, 575 S.W.2d 445 (1979)). The issue here stems from the first requirement — the existence of a valid and enforceable contract between the plaintiff and defendant. It is undisputed that Dr. Perry is not a party to the Services Agreement executed by ATS and Baptist. Instead, his standing as a plaintiff hinges on his status as a third-party beneficiary.

█ In Arkansas, a party may recover for damages from

breach of contract when that party is a third–party beneficiary to the contract. *Stilley v. James,* 347 Ark. 74, 60 S.W.3d 410 (2001). Dr. Perry's first amended complaint clearly alleges that he is a third–party beneficiary to the Services Agreement. Paragraphs 32 and 38 state:

> Baptist and [ATS] clearly intended to benefit plaintiff and other [ATS] Physicians under the services agreement, and plaintiff is therefore an intended third–party beneficiary under the services agreement.

A contract is actionable by a third party when there is substantial evidence of a clear intention to benefit that third party. *Little Rock Wastewater Util. v. Larry Moyer Trucking,* 321 Ark. 303, 902 S.W.2d 760 (1995). It is not necessary that the person be named in the contract if he is a member of a class of persons sufficiently described or designated in the contract. *Id.* Generally, the status of a third–party beneficiary is a matter of law; however, when a contract is ambiguous as to the intent of the parties, and the meaning of the language depends on disputed extrinsic evidence, the issue is a question of fact for the jury. *See, e.g., Kramer v. Blissard Management and Realty, Inc.,* 289 Ark. 419, 711 S.W.2d 813 (1986).

Baptist relies heavily on *Thompson-Holloway Agency v. Gribben,* 3 Ark.App. 119, 623 S.W.2d 528 (1981), where the Arkansas Court of Appeals held that a real–estate agent could not sue the defaulting purchaser to recover a lost commission as a third–party beneficiary. The court of appeals properly rejected the real estate agent's third–party beneficiary argument reasoning that privity is required before the real estate agent can maintain a suit on a contract for the sale of real property. *Id.* Dr. Perry is not a real–estate agent, and, thus, no privity is required for him to maintain a suit as a third party beneficiary. The reasoning in *Gribben* is inapposite.

On the other hand, Dr. Perry points to three cases in support of his claim of error. In one case, *Howell v. Worth James Const. Co.,* 259 Ark. 627, 535 S.W.2d 826 (1976), a utility contractor brought suit against a landowner and a trenching contractor for damages it allegedly suffered as result of water lines that broke in the course of trenching operations at the construction site. We held that the intent of a retainage provision in the contract between the property owner and the trenching contractor was to provide bonding for any damages the trenching contractor might cause to utility

lines. *Id.* Thus, the utility contractor was a third-party beneficiary for whom the retainage provision was specifically designed, and the utility contractor could recover against the property owner, as well as the trenching contractor. *Id.*

Dr. Perry also cites to *Tredrea v. Anesthesia & Analgesia,* 584 N.W.2d 276 (Iowa 1998), where the Supreme Court of Iowa was faced with similar facts. In that case, two anesthesiologists who worked for a hospital brought suit as third-party beneficiaries to a contract entered into between that hospital and a medical group composed of anesthesiologists. *Id.* The hospital signed an exclusive contract for anesthesia services with the medical group, but reserved the right to contract with other anesthesiologists, including the plaintiffs, for a specified time period. *Id.* The medical group agreed that it would not "unreasonably withhold" its consent to an extension of that time period. The two plaintiffs attempted to enter into a contract with the hospital after the specified time period, but the medical group refused to extend the time. *Id.* Plaintiffs sued and were determined to be third-party beneficiaries to the contract entered into between the medical group and the hospital. *Id.* The Iowa appellate court upheld the plaintiffs' standing as third-party beneficiaries.

Lastly, in *Little Rock Wastewater Util. v. Larry Moyer Trucking,* 321 Ark. 303, 902 S.W.2d 760 (1995), a project subcontractor brought an action against the sewer utility, alleging that it was a third-party beneficiary of a sewer line relocation agreement executed between the Highway and Transportation Department and the utility. We explained that the fact that the subcontractor was not the prime contractor did not preclude the subcontractor from being a third-party beneficiary to the agreement where the subcontractor did the actual work contemplated by the agreement. *Id.* We held that the question of whether the subcontractor was a third-party beneficiary of the sewer line relocation agreement was a question for the jury. *Id.*

■■ In this case, the Services Agreement, as reflected in the pleadings, does not speak to whether the individual physicians of ATS are intended third-party beneficiaries; that is, the Services Agreement does not expressly exclude or include the individual physicians as third-party beneficiaries. Dr. Perry alleges that ATS and Baptist intended to make him a third-party beneficiary. He supports that statement with several factual allegations, which we must treat as true and construe in the light most favorable to the plaintiff. *Ingram v. City of Pine Bluff,* 355 Ark. 129, 133 S.W.3d 382

(2003). Specifically, Dr. Perry's first amended complaint explains that the Services Agreement and formation of ATS stemmed out of a discussion between Baptist and the individual physicians. The complaint further alleges that as a result of those discussions, the surgeons formed ATS for the purpose of entering into a Services Agreement. Thus, a reasonable inference can be drawn that ATS was formed for the benefit of Baptist and the Services Agreement was entered into for the benefit of the individual physicians. Baptist and ATS clearly intended that the individual ATS surgeons perform the work contemplated by the Services Agreement. *See Little Rock Wastewater Util. v. Larry Moyer Trucking, supra.*

▉ Dr. Perry's first amended complaint also states that certain provisions in the Services Agreement reflect an intent to benefit individual physicians. Paragraph 6.03 of the contract allows the individual physicians (referred to as "Group Physicians") to collect charges for surgical and other professional services provided to trauma patients:

> "The parties agree that all charges for surgical or other professional services provided by any Group Physician to trauma patients shall be the responsibility of such Group Physician. Neither [Baptist] nor [ATS] shall be responsible for the billing, collection or payment of such charges."

Furthermore, the complaint references language in Paragraph 4.08 of the Services Agreement that states individual physicians are given a right to participate in the trauma-call schedule, subject only to Baptist determining "in its reasonable judgment, that a Group Physician is unsatisfactory in the performance of his duties . . . ." The agreement also characterizes the relationship between the individual physicians and Baptist in Paragraph 2.01:

> "[ATS] and each Group Physician's relationship to [Baptist] is that of an independent contractor and neither [ATS] nor Group Physicians shall be deemed employees, agents, servants, or other representatives of [Baptist]. Notwithstanding any other provisions contained herein, all professional services pursuant to this Agreement shall be considered services rendered to [Baptist] . . . ."

Indeed, the Services Agreement is replete with references to individual member physicians in defining the obligations of the parties.

▉ In Arkansas, a contract is actionable by a third party when there is substantial evidence of a clear intention to

benefit that third party. *Little Rock Wastewater Util. v. Larry Moyer Trucking,* 321 Ark. 303, 902 S.W.2d 760 (1995). In reviewing a motion to dismiss, the facts in the complaint are treated as true. *Ingram v. City of Pine Bluff, supra.* Here, Dr. Perry not only pled that he benefitted from the Services Agreement, but he also pled sufficient facts from which a reasonable inference can be drawn that ATS and Baptist intended to benefit him and other individual physicians. Once again, in testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Clayborn v. Bankers Standard Ins. Co., supra.* Under our standard of review, Dr. Perry met the requirements necessary to survive a Rule 12(b)(6) motion to dismiss for failure to state facts upon which relief can be granted. Accordingly, the circuit court erred in dismissing Dr. Perry's first amended complaint.

Reversed and remanded.

Special Chief Justice ROGER HARROD and Special Justice MIKE WILSON join.

CORBIN, J., and THORNTON, J., dissent.

DICKEY, C.J., and HANNAH, J., not participating.

RAY THORNTON, Justice, dissenting. Because I believe that appellant's complaint failed to allege facts that would establish that he was an intended third-party beneficiary to the services agreement between Baptist Health and Arkansas Trauma Surgeons, P.L.L.C., a limited-liability company, herein referred to as "Arkansas Trauma," I would hold that the trial court properly dismissed appellant's complaint. Accordingly, I must respectfully dissent.

In *Country Corner Food & Drug, Inc. v. First State Bank,* 332 Ark. 645, 966 S.W.2d 894 (1998), we outlined the standards to be applied when reviewing a dismissal order under Rule 12 (b)(6). We wrote:

> In reviewing a trial court's decision on a motion to dismiss under Rule 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. In deciding dismissal motions, the trial court must look only to the allegations in the complaint. In order to state a cause of action, the complaint must allege facts and not mere conclusions. Ark. R. Civ. P. 8. When a complaint is dismissed

without prejudice, the plaintiff has the option of pleading further or appealing. If the plaintiff appeals, the option to plead further is waived in the event of an affirmance by the appellate court.

*Id.* (*citing Hunt v. Riley*, 322 Ark. 453, 909 S.W.2d 329 (1995)) (internal citations omitted).

This court has noted that Arkansas is a fact-pleading state, and we will look to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Country Corner, supra.* Conclusions without the necessary factual underpinnings to support them are not enough to state a cause of action. *Hunt, supra.*

In light of the applicable standard of review, I would conclude that appellant's complaint was insufficient to survive a motion to dismiss. In his complaint, appellant asserted two causes of action. Appellant alleged that Baptist Health breached the services agreement entered into by Baptist Health and Arkansas Trauma. He further alleged that Baptist Health breached its implied duty of good faith and fair dealing in its performance of its obligations under the services agreement. However, appellant was not a party to the services agreement and had no contractual relationship with Baptist Health except as an incidental third-party beneficiary of that contract.

We have held that there is a presumption that parties contract only for themselves, and a contract will not be construed as having been made for the benefit of third parties unless it clearly appears that such was the intention of the parties. *Little Rock Wastewater Utility v. Larry Moyer Trucking*, 321 Ark. 303, 902 S.W.2d 760 (1995). A contract is actionable by a third party where there is substantial evidence of a clear intention to benefit that third party. *Id*; *see also Carolus v. Arkansas Light & Power Co.*, 164 Ark. 507, 262 S.W. 330 (1924). The intention of the parties, so far as these may be determined, may be examined to gain understanding of the meaning of the parties by the language employed, and their conduct in relation thereto may help to clarify what might otherwise be doubtful. *Howell v. Worth James Const. Co.*, 259 Ark. 627, 535 S.W.2d 826 (1976). A third party may not recover upon a contract in which he is a mere incidental beneficiary. *Cook v. U.S. Fidelity & Guaranty Co.*, 216 Ark. 743, 227 S.W.2d 135 (1950).

In order to survive a motion to dismiss, appellant's complaint must plead the factual basis for a determination that he was

an intended third-party beneficiary to the services agreement entered into by Baptist Health and Arkansas Trauma. To meet this requirement, appellant must assert facts sufficient to establish more than that he received a benefit from the services agreement. Appellant's allegations must also be supported by the "factual underpinnings" necessary to support his claim that he is an intended third-party beneficiary to the services agreement. Otherwise, as a nonparty to the services agreement, appellant lacked standing to pursue contractual claims against Baptist Health.

The factual allegations pleaded by appellant establish that Baptist Health entered into a services agreement with Arkansas Trauma.[1] Pursuant to that agreement, Arkansas Trauma provided Baptist Health with a trauma-call schedule of qualified surgeons for the purpose of providing emergency care at Baptist Medical Center. Appellant was a member of the pool of surgeons who participated in the trauma-call schedule. Arkansas Trauma and Baptist Health used the services of surgeons, such as appellant, to provide trauma-call services. Through his performance of the services, appellant was compensated by Arkansas Trauma rather than by Baptist Health. Although appellant received benefits from his participation in the trauma-call schedule, in my view, the complaint clearly established that the benefits were merely incidental to the contract between Arkansas Trauma and Baptist Health. After reviewing the allegations in appellant's complaint in the light most favorable to appellant, I am convinced that appellant failed to plead facts sufficient to establish that he was an intended third-party beneficiary to the services agreement entered into by Baptist Health and Arkansas Trauma. For that reason, I would conclude that the trial court properly dismissed the complaint.

I respectfully dissent.

I am authorized to state that Justice Corbin joins in this dissent.

---

[1] Arkansas Trauma was created by a group of surgeons through an operating agreement. The operating agreement, which is the only contract that appellant entered into, was not incorporated into his complaint. Thus, we do not know the nature of the agreement between Arkansas Trauma and appellant. It is probable that the operating agreement did not name appellant as an intended third-party beneficiary to the contract between Arkansas Trauma and Baptist Health because if that status was within the operating agreement, appellant would surely have presented it.